J-S47016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.V.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 424 EDA 2017 |

Appeal from the Decree Entered January 17, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0001212-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: J.V.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 427 EDA 2017 |

Appeal from the Order Entered January 17, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0001724-2015

BEFORE:   LAZARUS, MOULTON, JJ., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MOULTON, J.:                **FILED AUGUST 25, 2017**

In these consolidated appeals,[1] A.H. ("Mother") appeals from the January 17, 2017 decree terminating her parental rights to her son, J.V.F.

---

[1] On March 15, 2017, this Court *sua sponte* consolidated Mother's two appeals – one challenging the decree terminating Mother's parental rights and one challenging the trial court's order changing the goal to adoption. *See* Pa.R.A.P. 513.

("Child"), born in October 2014, and from the order dated the same date changing Child's permanency goal to adoption.[2] We affirm.

DHS opened a case file for Child in December 2014 due to drug and alcohol concerns with Mother. N.T., 1/17/17, at 6. On August 18, 2015, the trial court adjudicated Child dependent. Child was placed with, and continues to reside with, Paternal Grandmother. The trial court summarized the relevant factual and procedural history as follows:

> On December 24, 2014 an initial Single Case Plan (SCP) was created. The SCP objectives for Mother were to address any drug and alcohol abuse issues[;] comply with a drug and alcohol assessment; comply with recommendation; []only take medication as prescribed; refrain from use [of] any illegal drugs or alcohol[;] and participate in individual mental health therapy.[3]
>
> . . .
>
> On November 2, 2015, it was reported that Mother was scheduled for a drug and alcohol assessment on September 21, 2015 and did not attend. The Court ordered Mother to follow all SCP objectives; and referred Mother to [the Clinical Evaluation Unit ("CEU")] for a full drug and alcohol screen with dual diagnosis, an assessment, monitoring, and three random drug screens prior to the next court date.

---

[2] Child's father is deceased.

[3] The most recent SCP objectives for Mother were to "comply with a drug and alcohol assessment, to comply with those recommendations, to only take medications as prescribed, [to] not use any illegal drugs or alcohol and to participate in individual therapy, as well as maintain stable housing." N.T., 1/17/17, at 7.

On January 21, 2016, it was reported that on November 2, 2015, Mother had a positive drug screen and that on December 7, 2015, Mother tested positive for benzodiazepines and opiates.

On January 25, 2016, the Court ordered that if Mother's program did not have drug screens, Mother was to be referred to CEU for three random screens.

On March 2, 2016, the Court ordered Mother to sign [a] release of information form.

. . .

On May 9, 2016, Mother tested positive for benzodiazepines, creatinine, and opiates.

The CEU reported that Mother failed to come to CEU on June 10, 2016 to provide documentation for her current treatment status.

Trial Ct. Op., 3/27/17, at 1-2.

On December 9, 2016, DHS filed a petition to terminate Mother's parental rights to Child and to change Child's permanency goal to adoption. On January 17, 2017, the trial court held a hearing on the petition. At the conclusion of the hearing, the trial court orally delivered its decree involuntarily terminating Mother's parental rights and changing Child's permanency goal to adoption. The trial court entered its decree on that same date. On January 30, 2017, Mother timely filed a notice of appeal and concise statement of errors complained of on appeal.

On appeal, Mother raises the following issues for our review and determination:

> 1. Did the [t]rial judge rule in error that the Philadelphia City Solicitor's Office [met] its burden of proof that Mother's parental rights to her [child] should be terminated.

2. Did the trial judge rule in error that the termination of Mother's parental rights would best serve the needs and welfare of the [child].

3. Did the trial judge rule in error by changing the goal to adoption.

Mother's Brief at 3.

We first address Mother's claim regarding the termination of her parental rights.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotation marks omitted). If the trial court's decision is supported by competent evidence, this Court must affirm the decision. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007).

Termination of parental rights is governed by statute. 23 Pa.C.S. § 2511. The portion of the statute relevant to this appeal provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as

- 5 -

> inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

"In termination cases, the burden is upon [the petitioner] to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa.Super. 2003)).

The trial court terminated Mother's parental rights pursuant to section 2511(a)(1), (2), (5), (8) and (b). This Court need only agree with the trial court's decision as to any one subsection of section 2511(a), as well as section 2511(b), to affirm the termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). We will examine the facts of this case under section 2511(a)(1).

As it relates to section 2511(a)(1), the pertinent inquiry for our review is as follows:

> To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of

the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. . . . Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

*In re D.J.S.*, 737 A.2d 283, 285 (Pa.Super. 1999) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)). Although the six months immediately preceding the filing of the petition are the most critical to the analysis, "the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." *In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004). Additionally, to the extent that the trial court based its decision to terminate parental rights pursuant to subsection (a)(1), "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b). In *In re C.M.S.*, we explained, "[a] parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship." 832 A.2d 457, 462 (Pa.Super. 2003).

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the trial court must then engage in three additional lines of inquiry: "(1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b)." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (PA. 1998)).

In granting DHS's petition for involuntary termination, the trial court determined as follows:

> In the instant matter, Mother was given [SCP] objectives in December 2014 to address issues of drug and alcohol abuse and individual mental health treatment/therapy. Parenting classes for Mother [were] later incorporated in Mother's SCP objectives. Testimony of the social worker revealed[] Mother failed to provide documentation of completion of mental health treatment. Moreover, Mother failed to demonstrate she could successfully complete an intensive outpatient drug and alcohol treatment program. Mother[] failed to maintain continuous participation in a dual diagnosis treatment of the several programs she attended. Mother failed [to] maintain sobriety for a substantial period of time[.] Mother testified she tested positive for benzodiazepines, marijuana and opiates on December 12, 2016. Furthermore, Mother testified she did not attend several request for random drug screens. Testimony of the social worker revealed that one of the drug and alcohol treatment centers stated Mother needed to be reassessed for a higher level of care and failed to stay for the reassessment.
>
> Furthermore, testimony of the social worker revealed Mother . . . completed only 4 of 12 sessions of parenting classes during the seventeen (17) month life of the case.

. . .

In the present matter, during the seventeen months (17) [Child] has been in DHS care, Mother has struggled with maintaining sobriety. The social worker's testimony revealed [M]other's history of substance abuse and an outstanding arrest warrant are the issues that necessitated the child's placement with DHS. Furthermore, testimony revealed unsupervised visits were changed to supervised due to Mother's failure to provide documentation of mental health [and] drug and alcohol treatment compliance.

Trial Ct. Op., 3/27/17, at 4-5 (internal citations to record omitted).

Mother argues that she has remedied the SCP goals put in place by DHS. Namely, Mother asserts that she completed a chemical dependency treatment program in July 2015, is currently enrolled in a thirty-day drug and alcohol treatment program, and completed a parenting class.

We conclude that the record supports the trial court's determination. Child was initially removed because of concerns regarding Mother's drug and alcohol use, mental health issues, and housing. Contrary to Mother's claims, Mother's substance abuse and mental health issues persist. Ana Arguendas, the social worker assigned to Child, testified that she has not received any documentation from Mother regarding her completion of drug and alcohol treatment. N.T., 1/17/17, at 7-8. Indeed, Mother tested positive for drugs at several court hearings, most recently on December 12, 2016, just one month prior to the termination hearing. *Id.* at 10, 21. Arguendas also testified that Mother only completed four of twelve sessions for parenting classes during the life of this case. *Id.* at 12, 16. While testimony presented supports the contention that Mother is attempting to address her

substance abuse issues, she was not in a position to assume the caregiver role for Child at the time of the termination hearing. *Id.* at 42. In fact, Mother did not seek drug treatment until after DHS filed its termination petition. *Id.*; *see also* 23 Pa.C.S. § 2511(b) ("With respect to any petition filed pursuant to [subsection (a)(1)], the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.").

Thus, the record confirms that Mother refused or failed to perform parental duties for the six months immediately preceding the filing of DHS's termination petition on December 9, 2016. The record establishes that, due to Mother's noncompliance with mental health and drug and alcohol treatment, Mother's visits with Child were reduced to supervised visits, once per week. N.T., 1/17/17, at 19-20; Permanency Review Order (Non-Placement), 5/9/16, at 1. Although Mother made an effort to attend the visits she had with Child, Mother failed to address the concerns expressed by the court, which ultimately led to Child's removal. Accordingly, we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights to Child pursuant to section 2511(a)(1).

Mother next argues the trial court erred in finding termination of her parental rights would best serve the developmental, physical, and emotional needs and welfare of Child under section 2511(b).

"Section 2511(b) 'focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and

welfare of the child.'" *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting *In re Adoption of J.M.,* 991 A.2d 321, 324 (Pa.Super.2010)). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005). The trial court must also "discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.* The mere finding of a parent-child bond does not preclude termination of parental rights. Rather, the trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa.Super. 2003). "[A] court may properly terminate parental bonds which exist *in form* but not *in substance* when preservation of the parental bond would consign a child to an indefinite, unhappy, and unstable future devoid of the irreducible minimum parental care to which that child is entitled." *In re J.W.*, 578 A.2d 952, 958 (Pa.Super. 1990) (emphasis in original).

In addressing the best interests and welfare of Child, the trial court found:

> In the instant matter, the testimony established that [Child] would not suffer any irreparable emotional harm if Mother's parental rights were terminated. Testimony of the social worker was that [Child] and his foster parent, paternal grandmother, are very bonded and attached. Furthermore, the social worker testified [Child] is flourishing extremely well and acknowledges his foster parent as "Mom". Testimony established there was a parent/child bond between [Child] and his foster parent

- 11 -

> which did not exist between [Child] and his biological mother. Foster parent testified she loved [Child] and would be prepared to adopt [Child] if it became the [trial court's] goal.

Trial Court Opinion, 3/27/17, at 6 (internal citations omitted).

The record supports the trial court's finding that Child's primary bond is with his foster mother, Paternal Grandmother, rather than Mother. Further, the record supports the trial court's finding that Child will not suffer irreparable harm if Mother's parental rights are terminated. It was within the trial court's discretion to accept Arguendas' testimony, and to conclude that the benefits of a permanent home with Paternal Grandmother would outweigh any emotional distress Child might experience if Mother's parental rights were terminated.

Based on the record before us, we find no error or abuse of discretion in the trial court's conclusion regarding subsection (b) that Child's developmental, emotional, and physical needs and welfare are best met by terminating Mother's parental rights. Where the trial court's determination is supported by the record, this Court must affirm. *See In re R.L.T.M.*, 860 A.2d 190, 191 (Pa.Super. 2004).

Finally, we address Mother's challenge to the order changing the goal for Child to adoption.

> In cases involving a court's [decree] changing the placement goal . . . to adoption, our standard of review is abuse of discretion. To hold [that] the trial court abused its discretion, we must determine that its judgment was manifestly unreasonable, that the court disregarded the law, or that its action was a result of partiality, prejudice,

- 12 -

bias or ill will. While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions and conclusions; we have a responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Therefore, our scope of review is broad.

*In re S.B.*, 943 A.2d 973, 977 (Pa.Super. 2008) (internal citations and quotation marks omitted). However, we are mindful that "[w]hen the trial court's findings are supported by competent evidence of record, we will affirm 'even if the record could also support an opposite result.'" *In re N.C.*, 909 A.2d 818, 823 (Pa.Super. 2006) (quoting *In re Adoption of R.J.S.*, 901 A.2d 502, 506 (Pa.Super. 2006)).

Furthermore, this Court has stated,

Placement of and custody issues pertaining to dependent children are controlled by the Juvenile Act [42 Pa.C.S. §§ 6301-65], which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"). The policy underlying these statutes is to prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment. Consistent with this underlying policy, the 1998 amendments to the Juvenile Act, as required by the ASFA, place the focus of dependency proceedings, including change of goal proceedings, on the child. Safety, permanency, and well-being of the child must take precedence over all other considerations, including the rights of the parents.

*Id.* (internal citations and footnotes omitted).

Section 6351(f) of the Juvenile Act provides in relevant part:

**(f) Matters to be determined at permanency hearing.--** At each permanency hearing, a court shall determine all of the following:

- 13 -

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

. . .

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

   (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

   (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

   (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

42 Pa.C.S. § 6351(f); *see In re S.B.*, 943 A.2d at 977.

"The trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents." *In re S.B.*, 943 A.2d at 978. As this Court has held, "[a] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *In re N.C.*, 909 A.2d at 824 (quoting *In re Adoption of M.E.P.,* 825 A.2d 1266, 1276 (Pa.Super. 2003)) (alteration in original).

Mother argues that the goal change was not in Child's best interests. Mother emphasizes that she participated in parenting classes, completed a chemical dependence treatment program in July 2015, and is currently enrolled in a thirty-day drug treatment program.

The trial court determined that the goal change to adoption would be in Child's best interest because Child had been in placement for over 17 months and was adjusting well in his foster home, and because Mother had failed to meet any of her SCP goals established by DHS. N.T., 1/17/17, at 33-34.

The trial court's findings of fact and conclusions of law are properly supported in the record. Child was first placed with his paternal grandmother on June 1, 2015, and Child had been in custody of DHS for a period of more than 17 months at the time of the January 17, 2017 hearing. N.T., 1/17/17, at 8; Trial Ct. Op., 3/27/17, at 1. DHS established the SCP

goals for Mother, including: address drug and alcohol issues, only take medications as prescribed, refrain from using illegal drugs and alcohol, improve emotional/mental health, complete a full mental health assessment, visit with Child as permitted and scheduled, attend parenting classes, and address physical health issues. N.T., 1/17/17, at 7.

Mother has failed to demonstrate that she can successfully complete an intensive outpatient drug and alcohol treatment program, having attended six programs during the life of this case and failed to complete any one of the six programs. *Id.* at 12. Moreover, Mother only completed four of twelve sessions for parenting classes. *Id.*

Child has adjusted well living with Paternal Grandmother, referring to her as "mom." *Id.* at 8. Child is bonded to Paternal Grandmother. Arguendas testified that Child is doing "extremely well" with Paternal Grandmother, such that termination of Mother's parental rights would not cause irreparable harm to Child. *Id.*

Based upon this evidence, we conclude that the trial court did not abuse its discretion in finding that Child's welfare would best be served by changing the goal to adoption. As this determination is supported by the record, we may not disturb it on appeal. *See N.C.*, 909 A.2d at 823.

Decree and order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/25/2017